IN THE MATTER OF THE PETITION OF THOMAS GARDNER TO VACATE AN ASSESSMENT FOR REGULATING, GRADING, ETC., ONE HUNDRED AND THIRTY-FIFTH STREET FROM FOURTH TO EIGHTH AVENUE.

*Commissioner of public works — Chap. 574 of 1871 — chap. 313, 1874 — Assessment — "frauds" — what are not.*

When the commissioner of public works, in pursuance of section 5 of chapter 574 of 1871, completes any work, the contract for which has been abandoned by the contractor or forfeited for his misconduct, he is not required to comply with the restrictions and obligations of the general statute relating to the advertising and letting of contracts for public works.

The facts that an assessment imposed upon a lot exceeds in amount one-half its valuation by the assessors, and that those making the assessment have adopted an erroneous principle of assessment, do not constitute "frauds," but are at most mistakes of law and misapprehension of official duty, and they cannot, under chapter 313 of 1874, be made a ground for vacating the assessment.

APPEAL from order of the Special Term, denying petitioner's motion to vacate an assessment for regulating, grading, etc., One Hundred and Thirty-fifth street, from Fourth to Eighth avenue, in the city of New York.

*James A. Deering*, for the appellant.

*William Barnes*, for the respondent.

DAVIS, P. J.:

The court below found that: "It does not satisfactorily appear that the fraud and legal irregularities alleged in the petition to have been committed in the proceedings relative to said assessment, have been committed," and thereupon denied the prayer of the petition. We are at liberty, upon this appeal, to look into the facts of the case for ourselves; but we think that upon general principles, when a trial court has passed upon facts, its finding should be accepted by us as conclusive unless it appears very clearly to be wrong. It appears in this case that the contract made with Kehoe was abandoned by him after a small portion of the work under it had been done. It appears also quite satisfactorily that Kehoe, while pursuing the work under his contract, committed divers depredations, in carrying off and disposing of valuable sand found in the road, without making any compensation therefor, and that no damages for the breach of his contract had ever been recovered by the city against him; nor has any suit been commenced therefor. We do not think these facts, however clearly shown, constitute a fraud on the part of the city or its officers which should be allowed to vitiate the assessment for the work done on the street.

Kehoe was not paid for some portion of the work done by him, but it appears that the commissioner of public works had certified that he was entitled to be paid for work done under his contract to

the amount of $3,032.29, and that that sum formed a part of the total cost of the improvement assessed upon the owners of lands benefited. After Kehoe had abandoned the work an act was passed by the legislature of this State, on the 30th March, 1871 (chap. 227), particularly relating to this work, and which is in the following words:

"Section 1. The commissioner of public works of the city of New York is hereby authorized and directed to immediately cause One Hundred and Thirty-fifth street, from the Harlem river to the Eighth avenue, to be regulated, graded, curbed, guttered and flagged.

" § 2. The board of assessors in the city of New York are hereby authorized and directed to assess upon the property to be benefited, in the manner provided by law for making assessments for local improvements, the expenses which shall be actually incurred by the mayor, aldermen and commonalty of the city of New York, for such regulating, grading, curbing, guttering and flagging; which sums so assessed, shall be a lien upon such property, and all provisions of law relative to the collection of assessments for local improvements in said city shall apply thereto. ·

" § 3. This act shall take effect immediately."

This statute is especially limited in its operation to One Hundred and Thirty-fifth street, from Harlem river to the Eighth avenue; and it places the whole matter of regulating, grading, curbing, guttering and flagging that street in the hands of the commissioner of public works. By section 5 of chapter 574 of the Laws of 1871 (vol. 2, p. 1234), it is also provided that, whenever any contract for public work shall be abandoned by the contractor, or declared void by reason of any action of the contractor, etc., the commissioner of public works shall have the authority to proceed with the work contemplated in said contract in such manner as shall seem to him to be for the best interests of the city; and the board of assessors of the city of New York are directed and authorized to assess upon the property intended to be benefited, in the manner provided by law for making assessments for local improvements, the expenses which shall be actually incurred by the city for such work.

It has been held by the Court of Appeals that a statute of this

character relieved the particular work done under it from the obligations and restrictions of the general statutes which require the advertisement and letting of contracts for public works to be made in a prescribed manner. (*Greene* v. *Mayor*, Ct. Ap., MS. opinion RAPALLO, J.) That case, as decided in this court, is reported in 1 Hun, 24. The Court of Appeals reversed the judgment of this court, and according to the decision of that court the commissioner of public works had full authority, under this act, to make the contract for the completion of the work; and upon a motion to vacate an assessment, the ground ordinarily taken in this class of cases, of want of notice by advertisement or otherwise, will not be available.

Two other grounds for vacating the assessment are urged by the counsel for the appellants with much ability and ingenuity. They are these: First. That by statute, assessments of this character cannot exceed one-half of the valuation of the lands by the assessors for purposes of general taxation. And that the relator's lots are, in fact, assessed for this improvement for a sum considerably exceeding one-half of such general assessment.

Second. That the assessments were made upon an erroneous principle, by which the lots were assessed, not with any view to the benefit actually received, or their respective value, but in accordance with a general system of dividing the gross cost of the improvement by the whole number of lineal feet of the frontage of lots along the street, and imposing upon each lot an assessment in proportion to its number of lineal feet; and that this proceeding was done in this case by the clerks in the assessors' office without personal examination into the benefits received by the several lots, or any thing more, on the part of the assessors, than finally giving their sanction to the mathematical results at which these clerks had arrived. We are relieved from any expression of opinion whether these grounds are founded in fact, or, if so founded, whether they can stand the test of judicial scrutiny. If true, as alleged, they are not "frauds," but, at most, mistakes of law and misapprehension of official duty, and cannot, under chapter 313 of the Session Laws of 1874, page 366, amending section 7 of chapter 580 of the Session Laws of 1872 (page 1412), be made a ground for vacating the assessments. The remedy for such error is by *certiorari*, or some

proceeding different from the present which does not seek to correct but to annul the assessment. It follows from these views, that the order of the court below should be affirmed, with ten dollars costs besides disbursements.

Daniels and Brady, JJ., concurred.

Ordered accordingly.